Case: 1:26-cv-02340
Assigned To : Cooper, Christopher R.
Assign. Date : 7/1/2026
Description: TRO/Prelim. Inj. (D–DECK)

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

MARVIN HULLON ELLZEY III,
PO Box 11
7938 Broadway
Lemon Grove CA 91945

Tel: 619-369-7365 – WIFI
Email: marvin.ellzeyiii@hotmail.com

    Plaintiff,

v.

THE HONORABLE PETE HEGSETH, in his
official capacity as Secretary of War,
or his successor in office;

THE ACTING SECRETARY OF THE NAVY, in
his official capacity, or his successor in office;

REAR ADMIRAL KEVIN M. KENNEDY, in his
official capacity as Commander, Navy Personnel
Command, or his successor in office;

JONATHAN WITTER, in his official
capacity as Director, Defense Finance and
Accounting Service, or his successor in office;

PHILLIP J. RIZZO, in his official capacity as
Chief Executive Officer of the Liberty Military
Housing Employee Stock Ownership Trust;

UNITED STATES DEPARTMENT OF WAR;

UNITED STATES DEPARTMENT OF THE NAVY,

OTHER UNKNOWN FEDERAL EMPLOYEES AND OFFICIALS TO BE IDENTIFIED
THROUGH DISCOVERY

Defendants.

RECEIVED

JUL 1 2026

Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

- 1 -

COMPLAINT FOR DECLARATORY AND EQUITABLE RELIEF

Judge: _____

Case No. _____

COMPLAINT FOR DECLARATORY AND EQUITABLE RELIEF

JURY DEMAND: NONE

**SECTION I — JURISDICTION AND VENUE**

*Section I.A. — Subject Matter Jurisdiction*

1.      I bring this action under 28 U.S.C. § 1331 because it arises directly under the Constitution and laws of the United States. This action seeks declaratory and equitable relief concerning ongoing federal administrative conduct, the Secretary's non-discretionary supervisory mandates under 10 U.S.C. § 509, continuing restoration obligations under 10 U.S.C. § 875, continuing whistleblower-related concerns under 10 U.S.C. § 1034, and the civil remedy provisions of 18 U.S.C. § 1595 arising from violations of the forced labor and human trafficking statutes under 18 U.S.C. § 1589.

2.      This District Court proceeding is jurisdictionally distinct from, but parallel to, my active proceeding before the United States Court of Federal Claims. The Court of Federal Claims is addressing retrospective monetary compensation under the Tucker Act. This Court is asked to invoke its independent federal question jurisdiction to address ongoing equitable injuries, the extrajudicial use of military personnel networks to perpetuate trafficking and forced service, the preservation of evidence, and the enforcement of non-discretionary statutory duties under 10 U.S.C. § 509 that remain active today.

3.      I was released from a period of federal confinement on December 4, 2024.  During my release from federal confinement on December 4, 2024, the Office of the Secretary of the Navy was vacant, and the authority of the Secretary of War was not lawfully exercised, constituting a

contravention of duty. The mandatory restoration required by 10 U.S.C. § 875 was not carried out. Instead, the Government continued the challenged personnel and pay actions, which I allege operated as organized reprisal under 10 U.S.C. § 1034, furthered the alleged abuse-of-process framework under 18 U.S.C. § 1589(c), conflicted with the Federal Vacancies Reform Act, and derogated the Government's statutory duties under the Non-Detention Act of 1971. These failures led directly to the downstream harms, including the unlawful LIMDU predicate, the Naval Base San Diego assignment, the fraudulent DD Form 214, the forced Fleet Reserve conversion, and the continuing DJMS/MMPA pay-control architecture. Had the statutory restoration occurred, none of the subsequent coercive administrative instruments could have been executed.

3.      I explicitly allege that I was subjected to human trafficking during that period of confinement. Upon my release, the Government possessed a mandatory, non-discretionary duty under 10 U.S.C. § 875 to restore my rights, privileges, property, lawful pay status, and military standing. Rather than fulfilling that statutory mandate, subordinate actors within the Navy continued administrative actions that maintained an unlawful restraint over my status and interrupted my lawful compensation. In hindsight, the April 30, 2025 DD Form 214 was not the sole injury; it was a derivative smoke-screen instrument that gave a facial explanation for a deeper DJMS/MMPA pay-control mechanism. The actual continuing harm is the separation-based pay hold and pay-system architecture reflected in my MMPA/DJMS audit, including separation status coding, V2 stop transactions, zeroed pay computations, and "Pay Hold—Duty Status Determination" entries. I contend that this pay-hold architecture operates as the active mechanism depriving me of vested military pay and allowances, protected property interests, and restoration rights under 10 U.S.C. § 875. I do not seek Tucker Act money damages in this District Court action; those monetary issues remain preserved in the parallel Court of Federal Claims proceeding. I raise the Fifth Amendment pay-property injury here to establish ongoing equitable harm, to stop Defendants from relying on

COMPLAINT FOR DECLARATORY AND EQUITABLE RELIEF

void administrative predicates, and to require preservation and correction of the pay-status framework causing the continuing injury.

4.    The central issue presented to this Court is an ongoing, extrajudicial scheme of coercion and obstruction. Following my release, administrative actors deployed a formal "Letter of Instruction" and subsequent personnel profile adjustments. I contend that this Letter of Instruction meets the terminal elements of 18 U.S.C. § 1589(c) by weaponizing the abuse of the legal and administrative process, financial deprivation, and structural coercion to compel my service, maintain unlawful control over my active-duty status, and deliberately obstruct my ability to seek lawful restitution.

5.    Under the Trafficking Victims Protection Act (TVPA) and the coercion principles discussed in *United States v. Kozminski*, 487 U.S. 931 (1988), courts must examine whether the sophisticated abuse of legal process, confinement-related pressure, financial blockades, or the misuse of governmental authority are deployed to compel labor or maintain an unlawful restraint. I respectfully submit that these principles apply directly to the Defendants' deployment of a coercive, closed-loop administrative framework that systematically strips away my statutory active-duty protections.

6.    As recognized in Paragraph 3 of the Office of Legal Counsel (OLC) Advisory attached to my formal Board for Correction of Naval Records (BCNR) filings (see Exhibit B), federal agencies have a binding, non-discretionary obligation under 28 CFR § 0.25 to recognize when an administrative instrument is facially defective and when a service member's absolute right to seek full restitution is being unlawfully frustrated. The continued enforcement of the Letter of Instruction and the fraudulent status-conversion actions function as an active mechanism of obstruction designed to shield underlying trafficking violations from exposure.

- 4 -

COMPLAINT FOR DECLARATORY AND EQUITABLE RELIEF

7.    The Attorney General and other appropriate federal oversight authorities have been placed on notice through formal complaints and related submissions concerning the conduct described herein. While criminal review remains within the authority of the Executive Branch, the continuing administrative actions challenged in this proceeding remain active, constitute an ongoing extrajudicial obstruction of justice under 18 U.S.C. § 1512, and continue to produce present-day consequences that are properly subject to equitable review by this Court.

8.    I further allege that the continued reliance upon those administrative actions conflicts with mandatory federal standards governing official misconduct, prohibited personnel actions, and agency obligations. Rather than correcting the underlying defects once identified, the responsible agencies—failing to exercise the ultimate command and oversight authority vested in the Secretary under 10 U.S.C. § 509—have continued to enforce and rely upon the resulting non-compliant, coercive administrative determinations.

9.    I therefore seek equitable intervention to preserve evidence, prevent retaliation, compel compliance with mandatory restoration duties under 10 U.S.C. § 875, stabilize federal records and administrative networks, and halt an ongoing extrajudicial scheme that violates the statutory mandates of the Crime Victims' Rights Act (18 U.S.C. § 3771) by actively depriving me of the right to full, lawful restitution.

10.    I invoke the authority vested in this Court under the All Writs Act, 28 U.S.C. § 1651, and the Court's inherent equitable authority to preserve lawful federal process, preserve evidence and administrative records, prevent retaliation connected to protected disclosures, and ensure that

COMPLAINT FOR DECLARATORY AND EQUITABLE RELIEF

relevant federal data, transaction histories, and administrative records remain available for judicial review.

11.    Under *Service v. Dulles*, 354 U.S. 363 (1957), *Vitarelli v. Seaton*, 359 U.S. 535 (1959), and related *ultra vires* doctrines, federal agencies remain strictly bound by their own mandatory procedural, statutory, and jurisdictional requirements. I allege continuing reliance upon administrative instruments, including a DD Form 214 dated April 30, 2025, and precursor administrative actions, that were issued and enforced without lawful authority and in direct violation of these mandatory provisions. See Exhibit B.

12.    I further allege that unresolved restoration obligations under 10 U.S.C. § 875, continuing reprisal concerns under 10 U.S.C. § 1034, the ongoing use of personnel networks to obstruct a trafficking victim's asserted rights, continuing reliance upon disputed personnel actions, and continuing administrative consequences flowing from those actions create a present and ongoing equitable injury requiring judicial review and equitable relief.

13.    The BCNR is legally distinct from ordinary Navy staff action because it is not merely an internal personnel office. It is a Secretary-established correction board whose adjudicative authority depends on a lawfully composed Board, written appointment authority, quorum, member votes, findings, conclusions, recommendations, and a reviewable record of proceedings. The staff may assist the Board, but staff action cannot substitute for Board action. Where no case-specific Board panel, quorum, member vote, hearing record, transcript of testimony if any, findings, conclusions, or complete record of proceedings can be produced, the Government cannot represent that a lawful BCNR adjudication occurred.

COMPLAINT FOR DECLARATORY AND EQUITABLE RELIEF

14.    Under *Bowen v. Massachusetts*, 487 U.S. 879 (1988), *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682 (1949), *Bell v. Hood*, 327 U.S. 678 (1946), and *Axon Enterprise, Inc. v. FTC*, 598 U.S. 175 (2023), federal district courts retain absolute jurisdiction over constitutional, equitable, and *ultra vires* claims even when related monetary issues remain pending elsewhere.

Under Bowen, the availability of a retrospective money damages remedy in the United States Court of Federal Claims does not divest this District Court of jurisdiction to fashion prospective, non-monetary equitable remedies to correct ongoing process defects and extrajudicial administrative restraints.

15.    I expressly state that I do not seek Tucker Act damages in this proceeding. Rather, I challenge ongoing constitutional injuries, continuing administrative coercion under 18 U.S.C. § 1589, continuing agency reliance upon disputed personnel actions, continuing failures to satisfy mandatory statutory duties under 10 U.S.C. § 509 and 10 U.S.C. § 875, and continuing interference with restoration-related obligations.

16.    Because the injuries alleged herein are ongoing, equitable relief remains necessary to preserve meaningful judicial review, prevent further retaliation, ensure compliance with mandatory statutory and regulatory restoration obligations, and prevent continuing administrative conduct from frustrating lawful review.

*SECTION I.B. — VENUE AND OFFICIAL-CAPACITY NEXUS*

COMPLAINT FOR DECLARATORY AND EQUITABLE RELIEF

16.    Venue is proper in the District of Columbia under 28 U.S.C. § 1391(e)(1) because the federal officials responsible for the challenged conduct exercise ultimate authority through agencies headquartered within this District—including the Secretary of War whose supreme authority, direction, and control over all components of the Department is mandated by 10 U.S.C. § 509—and because the equitable relief sought is directed toward federal officers acting in their official capacities.

17.    This action concerns the review of continuing restoration obligations under 10 U.S.C. § 875, continuing whistleblower-related concerns under 10 U.S.C. § 1034, compliance with mandatory federal trafficking protections under 18 U.S.C. § 1589, the preservation of federal electronic personnel records, and equitable relief directed toward federal agencies and officials operating from the seat of government.

18.    The Court's equitable authority is necessary because the challenged administrative actions continue to produce present effects, including withheld compensation, continuing reliance upon disputed personnel actions, alleged status-conversion actions executed to enforce forced labor under 18 U.S.C. § 1589, continuing interference with restoration-related obligations, and ongoing harm that cannot be fully remedied through monetary relief alone.

19.    Because related proceedings remain active before the United States Court of Federal Claims and federal oversight complaints have already been submitted through appropriate channels, preservation of records and prevention of further retaliation are necessary to protect the integrity of ongoing federal proceedings. This includes records relating to disputed personnel actions, status conversions, compensation-framework changes, restoration obligations, and related administrative decision-making within automated defense networks.

- 8 -
COMPLAINT FOR DECLARATORY AND EQUITABLE RELIEF

20.    Pursuant to Chambers v. NASCO, Inc., 501 U.S. 32 (1991), this Court possesses inherent authority to prevent abuse of process, police bad-faith extrajudicial conduct, prevent the spoliation of electronic transaction logs, and preserve the integrity of federal judicial proceedings.

21.    Pursuant to *Telecommunications Research & Action Center (TRAC) v. FCC*, 750 F.2d 70 (D.C. Cir. 1984), this Court possesses authority to address agency action unlawfully withheld or unreasonably delayed, including the continuing failures of the Secretary to exercise his supervisory mandate under 10 U.S.C. § 509 to satisfy mandatory restoration-related obligations.

22.    Pursuant to Cobell v. Norton, 240 F.3d 1081 (D.C. Cir. 2001), equitable record-preservation relief may be appropriate where systemic administrative record failures and automated network gridlocks threaten the effectiveness of ordinary remedies and compliance with clear statutory and regulatory duties.

23.    Pursuant to *Porter v. Warner Holding Co.*, 328 U.S. 395 (1946), once equitable jurisdiction is properly invoked, this Court possesses broad, comprehensive authority to fashion effective equitable remedies necessary to secure complete justice and meaningful relief.

24.    Consistent with *Armstrong v. Exceptional Child Center, Inc.*, 575 U.S. 320 (2015), I anchor my equitable requests to specific, mandatory statutory and regulatory obligations, including 10 U.S.C. § 509, 10 U.S.C. §§ 875, 1034, and 18 U.S.C. § 1589, rather than any free-standing theory of equitable relief.

25.    Independent of the ultimate merits, the All Writs Act, 28 U.S.C. § 1651(a), authorizes this Court to issue orders necessary to preserve federal jurisdiction, prevent evidentiary spoliation of

- 9 -

COMPLAINT FOR DECLARATORY AND EQUITABLE RELIEF

backend automated systems, protect overlapping federal proceedings, and ensure that ongoing administrative conduct does not frustrate lawful adjudication.

## SECTION II — PARTIES

*II.A. PLAINTIFF*

**26.** I, Marvin Hullon Ellzey III, am appearing pro se.

27. I bring this independent action for declaratory and equitable relief to protect the integrity of the federal evidentiary record, address a closed-loop administrative deadlock, and enforce mandatory compliance rules while my parallel monetary claims are actively litigated.

*II.B. DEFENDANTS*

28. I sue Defendant Pete Hegseth in his official capacity as the Secretary of War (formerly Secretary of Defense). As the cabinet-level head of the Department of War, he possesses ultimate executive, statutory, and supervisory authority over all military departments, defense accounting agencies, and the administrative instruments issued under his chain of command.

29. I join the Secretary of Defense as a necessary party because the systemic ultra vires actions, unauthorized administrative restrictions, and evidence-suppression frameworks challenged herein began and escalated during his continuous tenure following my December 4, 2024 release from federal confinement. Because the Department of the Navy has undergone severe, compounding leadership instability—characterized by vacated offices, abrupt civilian removals, and a lack of

- 10 -
COMPLAINT FOR DECLARATORY AND EQUITABLE RELIEF

Senate-confirmed leadership—the Secretary of War represents the stable, senior statutory authority required to ensure compliance with federal law and to halt the ongoing abuse of administrative processes executed by his subordinates. I direct this official-capacity action to the Secretary of War to ensure complete compliance with this Court's orders and to address the ongoing leadership vacuum below his immediate command.

30. I sue the Office of the Secretary of the Navy, currently occupied in an acting capacity, as an institutional defendant without naming the temporary individual incumbent. Pursuant to 10 U.S.C. § 8013, the Secretary of the Navy is the chief executive officer of the Department of the Navy. I intentionally elect not to name the current Acting Secretary of the Navy individually in order to protect his temporary, transitioning capacity from personal exposure, while strictly holding the Office itself, its successors, and its senior supervisor—the Secretary of War—accountable for the administrative adjustments required to resolve this dispute.

31. I invoke the Federal Vacancies Reform Act (FVRA), 5 U.S.C. §§ 3345 *et seq.*, to establish that the office of the Secretary of the Navy has been caught in a continuous cycle of unconfirmed, short-term, or acting tenures since December 2024. I allege that subordinate actors within Navy Personnel Command have exploited this systemic vacancy vacuum to issue void personnel instruments, execute unauthorized status changes, and spoliate back-end tracking data without proper civilian oversight. Pursuant to the FVRA, any administrative action taken by an official serving in violation of statutory time limits or appointment thresholds is void *ab initio* and cannot be ratified, directly triggering this Court's equitable jurisdiction to review the non-discretionary actions of the Department and to enforce compliance against the stable, named leadership within the chain of command.

COMPLAINT FOR DECLARATORY AND EQUITABLE RELIEF

32. I sue Defendant Rear Admiral Kevin M. Kennedy in his official capacity as the Commander, Navy Personnel Command (NPC), or his successor in office. Defendant Kennedy is directly responsible for the operational management of naval personnel records, active-duty tracking databases, and the automated "Panel 1 Gain" system workflows. I join him because he was the long-serving official in office throughout the execution of the illegal, undisclosed administrative acts beginning in 2024, and his command maintains direct custody over the back-end transaction trails and electronic databases whose history files require preservation under ordinary litigation-preservation duties and this Court's inherent authority.

33. I sue Defendant Jonathan Witter in his official capacity as the Director of the Defense Finance and Accounting Service (DFAS), or his successor in office. Defendant Witter is the head of the agency responsible for military pay delivery, the management of Master Military Pay Accounts (MMPA), and the maintenance of back-end electronic pay database access logs. I join him because he was in office throughout the entirety of these events, during which DFAS systems were actively manipulated as an economic weapon to implement the artificial financial extraction and coercive restraint engineered by internal actors.

34. I name the United States Department of War and the United States Department of the Navy as institutional defendants whose internal components, automated human resource software networks, and data logging systems are being utilized to perpetuate the ongoing closed-loop administrative deadlock.

*II.C. — BASIS FOR JURISDICTION AND LEGAL PROCESS ABUSE FRAMEWORK*

COMPLAINT FOR DECLARATORY AND EQUITABLE RELIEF

35. I explicitly invoke the statutory thresholds discussed within the Trafficking Victims Protection Act ("TVPA"), 18 U.S.C. § 1589(c), and the analytical framework articulated in *United States v. Kozminski*, 485 U.S. 531 (1988). I do not ask this Court to supervise or initiate any criminal prosecution. Rather, I reference these authorities solely as analytical frameworks demonstrating how internal agency actors allegedly abused legal and administrative processes to impose an unconstitutional and *ultra vires* restraint upon my military status.

36. Specifically, I allege that agency actors executed an unauthorized limited-duty assignment to Naval Base San Diego in order to manufacture administrative command jurisdiction and obtain access to NSIPS personnel systems. I further allege that those systems were then used to implement a fraudulent personnel override that severed my active-duty pay and created an oppressive administrative double-bind. This systemic asymmetry provided the agency with an unlawful coercive advantage by combining financial deprivation with physical isolation, thereby impairing my ability to defend and render the challenged administrative actions reviewable under 5 U.S.C. § 706.

*II.D. — SEPARATE ENTITY IDENTIFICATION AND RULES COMPLIANCE*

37. I explicitly state that pursuant to Federal Rule of Civil Procedure 25(d), all individuals named above are sued strictly in their official capacities. Any change in the identity of the officeholders during the pendency of this litigation shall result in automatic substitution by operation of law, ensuring that the institutional obligations of the Department of War and Department of the Navy remain permanently bound by this Court's orders.

COMPLAINT FOR DECLARATORY AND EQUITABLE RELIEF

38. To maintain compliance with Federal Rule of Civil Procedure 8(a), I have intentionally separated the detailed factual chronology, administrative history, evidentiary record, and related proceedings into a structured exhibit architecture accompanying this Complaint.

a. Exhibit A contains my sworn District Court Narrative Affidavit, presented in first-person form, describing the chronology of events, the continuing administrative restraints, the notice provided to federal officials, the alleged deliberate indifference of responsible agencies, and the continuing equitable harms requiring intervention by this Court.

b. Exhibit B contains the pleadings and filings submitted in my parallel proceeding before the United States Court of Federal Claims, demonstrating that monetary compensation issues are already being litigated in that forum and are not the primary subject of this action.

c. Exhibit C contains my detailed factual narration, criminal disclosures, Attorney General submissions, and related materials demonstrating notice provided to Executive Branch officials and federal oversight authorities concerning the matters alleged herein.

d. Exhibit D contains the Master Evidentiary Appendix, including personnel records, DFAS records, Leave and Earnings Statements, BCNR materials, preservation requests, housing records, correspondence, transaction histories, and related documentary evidence supporting the allegations presented to this Court.

I incorporate these exhibits by reference solely to provide factual context, establish notice, document preservation concerns, and assist the Court in understanding the continuing nature of the injuries alleged while maintaining a concise pleading structure.

## SECTION III — STATEMENT OF CLAIM

39. I allege that this continuing sequence has trapped me within the 10 U.S.C. § 1237 inactive-duty pay system under the 'IDT Fleet RES RC40' (UIC 9040N) reserve structure. This assignment is an

- 14 -

ongoing administrative fiction. Under 10 U.S.C. § 1237, the payment systems for inactive duty are mechanically incapable of processing or distributing the vested, non-discretionary active-duty pay and allowances mandated by my true assignment under BUPERS Order 1722 released 16 February 2023 ('CONTINUE PRESENT DUTY' at my NATO PE Billet). Applying the doctrine in *Chatwin v. United States*, 326 U.S. 455 (1946), the broad language of administrative assignment authority cannot be used by internal actors as a smoke screen to mask an active financial blockade that completely lacks my statutory consent under 10 U.S.C. § 8330.

40.    The BCNR issue is central because the Board is not supposed to operate as an extension of ordinary Navy organizational command. The legal separation between the BCNR and the Navy exists only when the Board function is lawfully executed through an independent adjudicative process. Under 32 C.F.R. § 723.2, the BCNR is established by the Secretary of the Navy under 10 U.S.C. §§ 1034 and 1552, consists of civilian members appointed by the Secretary, and requires three members present to constitute a quorum. That structure exists to prevent ordinary Navy staff, technicians, or Manpower personnel from acting as substitute APA judges while treating their staff action as though it were a lawful Board adjudication.

The precept is therefore not a routine memorandum. It is the appointment instrument that purports to identify who may exercise Board authority. If the precept was signed, cancelled, superseded, or administered by officials outside lawful Secretarial authority, or if senior staff members were effectively appointed to act as adjudicators without a lawful Board record, then the BCNR process collapses back into the very Navy organization it is supposed to review. That structural defect is compounded by the requirement that adjudicative proceedings be preserved in a manner subject to federal review. Under 28 U.S.C. § 753 (The Court Reporters Act), verbatim records of proceedings are required to ensure accuracy, accountability, and appellate review. Because the United States District Court functions as the reviewing authority over BCNR determinations through

- 15 -

COMPLAINT FOR DECLARATORY AND EQUITABLE RELIEF

constitutional due process protections under the Fifth and Fourteenth Amendments, the absence of a reliable transcript or equivalent record prevents meaningful judicial review and undermines the legitimacy of any purported Board action.

What certifies that the BCNR actually operated as a Board is the same thing that preserves any federal proceeding: a reliable transcript or record of proceedings. Under 32 C.F.R. § 723.5(b)(4), testimony before the Board is taken under oath or affirmation and the proceedings and testimony are recorded verbatim. Under 32 C.F.R. § 723.6(c), the record of proceedings must reflect the Board's quorum, member names, votes, findings, conclusions, recommendations, and materials necessary to show a true and complete history of the proceeding. Without that record, there is no lawful way to verify whether the Board acted independently, whether a quorum existed, whether members voted, whether testimony was preserved, or whether staff action was used to simulate Board deliberation. This defect also implicates 10 U.S.C. § 1034 because Congress protected whistleblower-reprisal claims from being buried inside ordinary command channels. When a reprisal claim is raised, the correction-board process must remain independent, reviewable, and capable of supporting required Secretarial, congressional, and judicial oversight. If the BCNR record cannot show an independent Board proceeding, then Defendants cannot use the BCNR posture to defeat this Court's jurisdiction, avoid federal review, or continue relying on the challenged Navy-generated instruments. **PRECEPT is the authority document, transcript/record is the certification document, and 10 U.S.C. § 1034 is the congressional protection that prevents BCNR from becoming a Navy staff shield.** 32 C.F.R. § 723.2 gives the Board's establishment, civilian appointment, and quorum structure; § 723.5(b)(4) supplies the verbatim-record point; and § 723.6(c) supplies the record-of-proceedings requirements.

COMPLAINT FOR DECLARATORY AND EQUITABLE RELIEF

Case 1:26-cv-02340-CRC    Document 1    Filed 07/01/26    Page 17 of 31

**The Legal Duty of Good Faith and Inaction as an Illegal Act**

- The United States Government and its executive agencies possess a non-discretionary duty to operate in good faith and adhere strictly to their own regulatory floors and statutory mandates.

- When a federal agency deliberately ignores a facially defective or void administrative instrument, its passive tolerance and intentional inaction constitute an illegal mechanism of administrative coercion.

- Weaponized bureaucratic inaction—such as allowing an unlawful personnel status or a fraudulent tracking mechanism to persist—is not a mere procedural delay; it is an *ultra vires* exercise of power designed to overbear an individual's legal resolve.

The Analytical Framework of *Chatwin v. United States* Bars the Defendants' Reliance on Administrative Fictions. The Defendants' strategic reliance on void administrative instruments—specifically the unauthorized backend NSIPS entry and the facially void DD Form 214—is strictly barred by the analytical framework of *Chatwin v. United States*, 326 U.S. 455 (1946). Internal military actors cannot deploy broad administrative or assignment authority as a deceptive smokescreen or a legal fiction to mask an ongoing, non-consensual restraint of status. Because these automated database overrides entirely lack competent proof of lawful intent or my explicit statutory consent, they cannot be used to engineer an artificial financial blockade. Under *Chatwin*, the Court must look past these automated administrative maneuvers to recognize and protect my continuous, uninterrupted active-duty status.

- 17 -

COMPLAINT FOR DECLARATORY AND EQUITABLE RELIEF

# GOVERNING LAW AND RELEVANT LEGAL DOCTRINES

A. The Chatwin Doctrine: Prohibition Against Administrative Fictions as a Smokescreen for Coercive Restraint

The Defendants' strategic reliance on automated backend administrative instruments—specifically the unauthorized, non-consensual entry within the Navy Standard Integrated Personnel System (NSIPS) and the facially void DD Form 214—is strictly barred by the analytical framework established by the United States Supreme Court in *Chatwin v. United States*, 326 U.S. 455 (1946). Under *Chatwin*, internal military actors and agency officials are prohibited from deploying broad administrative, database, or personnel assignment codes as a deceptive legal fiction or tactical smokescreen to mask an ongoing, non-consensual restraint of an individual's true legal status. Because these automated database overrides entirely lack competent proof of lawful intent, regulatory compliance, or explicit statutory consent, they cannot be used to engineer an artificial financial blockade or freeze a service member in an administrative deadlock. Under *Chatwin*, this Court must look past automated human resource software maneuvers, pierce the corporate-equity fiction of a voluntary "Fleet Reserve" retirement, and recognize Plaintiff's continuous, uninterrupted active-duty status from his true point of origin.

**B. Statutory Supremacy of 10 U.S.C. § 509 Over Conflicting Executive Action**

Pursuant to the explicit command of 10 U.S.C. § 509(a), Congress has strictly bounded Executive Branch authority by dictating that any alteration, modification, or extension of a service member's active term of service requires their express "written consent." Furthermore, 10 U.S.C. § 509(b) mandates that no administrative maneuver or altered status may operate to degrade, depress, or strip a member of the "rights, privileges, and benefits" they are legally entitled to receive under their true rank and career timeline.

- 18 -

COMPLAINT FOR DECLARATORY AND EQUITABLE RELIEF

Under the constitutional doctrine of the separation of powers (*Youngstown Sheet & Tube Co. v. Sawyer*), a federal statute strictly overrides a conflicting Executive Order or subordinate administrative instruction. Subordinate actors cannot utilize an Executive Order—such as a fast-track readiness directive targeting clinical psychological or medical conditions (e.g., body dysmorphia or an eating disorders framework)—to bypass the statutory floor of § 509. The Defendants cannot use an automated backend NSIPS entry to execute a forced, non-consensual Fleet Reserve retirement transaction as an administrative shortcut to evade the mandatory physical disability evaluation and medical retirement discharge pathways established by Congress under Title 10, Chapter 61 (Disability Evaluation System).

**C. The Accardi Principle and Mandatory Regulatory Compliance**

It is a foundational tenet of administrative law that a federal agency must rigidly adhere to its own internal regulations, instructions, and procedural rules. Under the *Accardi* Principle (*United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954); *Service v. Dulles*, 354 U.S. 363 (1957)), an agency's failure to follow its own mandatory, non-discretionary procedures constitutes a fatal due process violation, rendering the resulting administrative action void *ab initio*.

When a service member is documented with a clinical medical or psychological condition that impacts retention or deployment, the Navy is regulatory and statutorily bound to route that member through the formal, established protections of the Disability Evaluation System (DES). The Defendants possess zero administrative discretion to invent a parallel, automated mechanism to short-circuit this process. By utilizing a forced NSIPS database entry to bypass a medical board evaluation, the Defendants acted in open defiance of their own regulatory mandates, invalidating the entire administrative action under the *Accardi* framework.

**D. The Administrative Procedure Act (5 U.S.C. § 706) and the "Continuing Violation" Doctrine**

COMPLAINT FOR DECLARATORY AND EQUITABLE RELIEF

The Administrative Procedure Act (APA) equips this Court with the clear equitable authority to hold unlawful and set aside agency actions, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, or taken in excess of statutory jurisdiction and limitations (5 U.S.C. § 706(2)).

Furthermore, because the Defendants have deployed a closed-loop automated financial and personnel system to sustain an unconsented status tracking override, the resulting injury does not constitute a single, isolated administrative event. Rather, under federal jurisprudence, the continuous denial of proper active-duty status, the ongoing blockade of statutory pay entitlements, and the systemic evasion of Chapter 61 medical retirement boards constitute a "continuing violation." This continuous administrative injury persists day-by-day, locking Plaintiff in an unlawful restraint that can only be cured by an order from this Court vacating the void instruments and compelling compliance with federal positive law.

E. The Substantive Due Process Standards (Rochin and DeShaney) • Rule: While the government generally has no constitutional duty to protect individuals from private harms under DeShaney v. Winnebago County (1989), a severe exception arises under the State-Created Danger and Deliberate Indifference doctrines when the government actively places an individual in a hazardous situation or weaponizes its own passive tolerance of an ongoing hazard to exploit vulnerability. • Application: Under Rochin v. California, 342 U.S. 165 (1952), when the government uses psychological pressure, continuous isolation, or deliberate inaction to allow abusive, grueling, or illegal conditions to persist until an individual's "will is overborne" (Blackburn v. Alabama; Spano v. New York), the administrative conduct rises to a violation of Substantive Due Process because it actively "shocks the conscience.

F. The Chronological Fraud of the Temporary Duty (TDY) Flight and the Void Ab Initio Posture of the Naval Base San Diego Assignment

- 20 -
COMPLAINT FOR DECLARATORY AND EQUITABLE RELIEF

1. I explicitly state that my physical movement to San Diego, California, was executed entirely under Temporary Duty (TDY) orders, with my flight ticket purchased and funded solely under transient TDY mechanisms rather than permanent change of station orders. The orders to Naval Base San Diego (NBSD) were void ab initio. The NBSD assignment order would have automatically self-canceled ("CANEX") by operation of system safeguards had internal administrative actors not stepped in to execute a manual NSIPS Panel 1 Force Gain override on December 13, 2024.

2. While trapped under this simulated NBSD assignment, administrative personnel executed a deliberate series of extra-legal maneuvers explicitly designed to block me from completing a standard contract extension or executing a lawful reenlistment. The ultimate product of this obstruction was the generation of the April 30, 2025 DD Form 214—another facially void instrument. On its surface, this fraudulent document maliciously presents the false appearance that my active naval service naturally terminated simply because I "failed to reenlist" or extend my contract.

3. This surface narrative is an absolute administrative fiction shattered by the statutory supremacy of 10 U.S.C. § 509 and 10 U.S.C. § 8330. Because the United States military is an all-volunteer force, 10 U.S.C. § 509 protects my continuous active-duty term of service, dictating that a regular enlisted member cannot have their status degraded, depressed, or severed without their express written consent, unless a valid, fully adjudicated administrative separation or court-martial occurs. I never consented to a zero-pay status or an inactive-duty reserve characterization, nor did the command complete a valid, jurisdictionally sound administrative separation process under MILPERSMAN 1910-402. 3. This surface narrative is an absolute administrative fiction shattered

- 21 -

COMPLAINT FOR DECLARATORY AND EQUITABLE RELIEF

by the statutory supremacy of 10 U.S.C. § 509, operating in tandem with 10 U.S.C. § 8330. Because the United States military is an all-volunteer force, 10 U.S.C. § 509 protects my continuous active-duty term of service by dictating that the Secretary's administrative machinery cannot be manipulated by subordinates to alter, degrade, or sever a member's active status without their express written consent, unless a valid, fully adjudicated administrative separation or court-martial occurs. As an all-volunteer service member who never provided written consent to separate or convert to an inactive component, I am statutorily entitled to a clear, unobstructed contract pathway to complete my enlistment extensions until my established High Year Tenure (HYT) Gate is fully met. The Defendants possess zero administrative discretion to use a simulated NBSD assignment or a facially void DD Form 214 as an end-run to block my extension or claim I "failed to reenlist" my active-duty enlistment must remain continuously extended under 10 U.S.C. § 509.

4. BUPERS Order 1722, issued on February 16, 2023, remains my last lawful personnel instruction, explicitly commanding me to "CONTINUE PRESENT DUTY" under the statutory protection of the Secretary's record-keeping mandate. Furthermore, 10 U.S.C. § 875 strictly protects my career timeline up to my appropriate High Year Tenure (HYT) Gate. Also, the mandatory restoration provisions of 10 U.S.C. § 875, the physical text or an updated representation of BUPERS Order 1722 does not need to be structurally reissued or modified. The original, funded Line of Accounting tied directly to the last ORDMOD issued in 2020 remains statutorily operative under the supervisory boundaries of 10 U.S.C. § 509. The original Line of Accounting contains the pre-arranged fiscal allocations.

**SECTION IV — REQUESTED EQUITABLE RELIEF**

*A. CONTINUING HARM AND REQUESTED EQUITABLE RELIEF*

40. I explicitly allege that my forced, fraudulent tracking within the 10 U.S.C. § 1237 inactive-duty pay system constitutes a present, day-by-day Continuing Harm under the Fifth Amendment's Takings Clause. Every single day that the Defendants maintain the facially void DD Form 214 and enforce this reserve tracking structure, a new, independent, and distinct taking of my private property occurs by operation of law. My true legal status as a continuous active-duty member remains entirely unchanged and uninterrupted; the fraudulent acts of internal actors have not ended, yielded, or altered my active status.

41. Rather, as demonstrated by the parallel federal question presented before the U.S. Court of Federal Claims within the operative file *Marvin Ellzey v Dpt of War_US Navy _NARRATIVE Exhibit A_3.docx* (incorporated as Exhibit A) and the official BUPERS transaction history attached as Exhibit B, this artificial extraction of my financial resources is an active, ongoing, *ultra vires* mechanism designed to achieve complete financial strangulation. It structurally strips me of the economic means required to secure my family, retain counsel, and maintain my legal claims—constituting an acute, continuing violation of my First Amendment Right to Petition and Access to the Courts, matching the terminal elements of coercive restraint under 18 U.S.C. § 1589(c) and *United States v. Kozminski*, 485 U.S. 531 (1988).

42. To remedy this continuing harm, I request final declaratory and equitable relief directing Defendants to terminate unauthorized tracking under the 10 U.S.C. § 1237 inactive-duty pay system parameters, correct database records to reflect my claimed continuous active-duty status, restore proper Master Military Pay Account (MMPA) processing consistent with lawful status, and recognize BUPERS Order 1722 as the last lawful personnel instruction unless and until Defendants establish a lawful alternative. Any request for interim relief is addressed by separately filed motion.

COMPLAINT FOR DECLARATORY AND EQUITABLE RELIEF

43. I request preservation of all relevant back-end transaction access logs, system override audits, and metadata histories within the Navy Standard Integrated Personnel System (NSIPS) and Defense Joint Military Pay System (DJMS). I seek discovery and administrative-record development through the ordinary procedures authorized by the Federal Rules of Civil Procedure, the Local Civil Rules, and any scheduling order entered by the Court.

44. Jurisdictional Reservation: I seek equitable correction and record-preservation relief in this Court. The ultimate mathematical calculation and award of backpay damages remains strictly reserved to my parallel action before the United States Court of Federal Claims, as supported by the text within Marvin Ellzey v Dpt of War_US Navy _NARRATIVE Exhibit A_3.docx.

*B. EVIDENCE PRESERVATION AND SPOLIATION CONCERNS*

45. I identify evidence-preservation and spoliation concerns based on the Defendants' actual notice of claims and their alleged failure to preserve critical electronic and physical records. As documented in the sworn, signed law enforcement statements attached as Exhibit C-1 (ATMPT Murder Vol Statement Page 1.jpg and Attempted Murder Vol Statement Page 2.jpg), the Department of the Navy was provided with explicit, immediate notice on March 4, 2025, of an alleged life-threatening assault (a rear chokehold and blows to the ribs) occurring on January 3, 2024, at Naval Consolidated Brig Miramar. This sworn declaration explicitly stated that the underlying report was being left un-serialized and that internal actors were actively blocking the preservation of recorded evidence.

- 24 -
COMPLAINT FOR DECLARATORY AND EQUITABLE RELIEF

46. The Defendants willfully breached their non-discretionary duty to preserve evidence by permitting critical surveillance files to be destroyed to evade statutory investigation under 5 U.S.C. § 732. Under federal law, the moment an agency reasonably anticipates litigation or receives notice of a potential crime, an absolute duty to preserve attaches, overriding all routine deletion schedules. Despite this trigger, the Bureau of Naval Personnel explicitly admitted in its March 3, 2025 response letter (Exhibit C-2 / *2024-N_1_Preseveration of Evidence.PDF*) that no video surveillance or Command Duty Officer (CDO) cellphone records were located because the agency permitted its routine two-month retention window to lapse. This deliberate administrative omission was utilized alongside a facially void, system-overridden DD Form 214 to strip me of an active-duty tracking footprint, explicitly designed to bypass the mandatory employee protection and independent investigation requirements mandated by 5 U.S.C. § 732.

47. These allegations preserve my request for appropriate evidentiary remedies if relevant evidence has been intentionally destroyed or withheld. Despite explicit warnings submitted through the SecureRelease™ Portal—including Request No. 2026-NavyFOIA-003032 (Exhibit C-3 / SecureRelease™ Portal_003032.pdf or similar preservation file) and ongoing multi-command record shielding documented by Naval Legal Service Command in Request No. 2026-NavyFOIA-002401 (Exhibit C-4 / Gmail – 2026-NavyFOIA-002401_Sanity Board Email.pdf)—the Defendants have maintained a state of active administrative deadlock. If the primary surveillance footage has been permanently disposed of or irretrievably purged, I request that the Court consider appropriate spoliation remedies under the ordinary rules applicable to civil litigation.

*C. ADDITIONAL RECORDS AND VIDEO EVIDENCE*

COMPLAINT FOR DECLARATORY AND EQUITABLE RELIEF

48. I identify the unredacted July 25, 2023 hotel assault video as material evidence relevant to my claims. Following the assault at the Heritage Inn, a federal Criminal Investigation Division (CID) officer placed me into a patrol vehicle, removed my do-rag, and observed my medical head staples. This officer explicitly stated he possessed a video recording of me being assaulted and needed to question me. While I was confined at FMC Devens, my written public records requests mailed to the La Mesa Police Department (LMPD) went unanswered. I seek preservation and production of this evidence through discovery or other appropriate process authorized by the Court.

49. However, the public record report later introduced to me by military JAG personnel contains a completely different serial number (Case No. 23018141) that mismatches the actual municipal report (Case No. 23018114). Furthermore, the official LMPD report surreptitiously lists a telephone number—(619) 439-5338—that I never presented to the police that night because I had lost the prepaid phone chip earlier that month. This phone number was, however, uniquely familiar to the assigned Naval Base San Diego (NBSD) JAG officer, demonstrating that military legal actors were actively injecting data into local police files to covertly shape a pretextual narrative.

50. This highly sensitive video, capturing me nude and severely injured, may have been compromised and distributed within the Security Detachment command for extrajudicial amusement. Specifically, while I was physically picking up my EPAR at the NBSD Commanding Officer's office, a Master-at-Arms Chief (MAC) openly mocked the video in the third person to illicitly incite a reaction and compromise evidentiary chain-of-custody.

51. I may need to seek body-camera footage from the La Mesa Police Department through the ordinary discovery, subpoena, or records process. This footage is relevant because it may show whether responding elements processed the incident as a 5150 mental-disorder detention arrest

- 26 -

COMPLAINT FOR DECLARATORY AND EQUITABLE RELIEF

instead of treating me as the victim of an assault and arresting the offending person who allegedly admitted to assaulting me in the true police report. Because this evidence relates to the physical trauma and surrounding administrative narrative, I request that relevant federal Defendants preserve and produce responsive records within their custody and control.

### D. RESERVATION OF RIGHT TO FILE SEPARATE MOTIONS

52. Because the record involves overlapping federal systems and parallel proceedings, I reserve the right to file separate motions for relief authorized by the Federal Rules of Civil Procedure and this Court's Local Civil Rules. This Complaint is intended to state the claims and requested final relief without duplicating separately filed motion practice.

**FINAL PRAYER FOR RELIEF**

WHEREFORE, I respectfully request that this Court enter judgment in my favor and order the following relief:

- **A. Exercise jurisdiction over this declaratory and equitable proceeding;**
- B. Recognize the jurisdictional distinction between this proceeding and the parallel proceedings pending before the United States Court of Federal Claims;
- C. Enter declaratory relief concerning the challenged administrative conduct and unresolved restoration-related obligations;
- D. Enter final equitable relief, after appropriate proceedings, necessary to correct ongoing administrative conduct and preserve lawful federal process;

- 27 -
COMPLAINT FOR DECLARATORY AND EQUITABLE RELIEF

- E. Enter preservation orders necessary to protect administrative records, electronically stored information, and litigation-relevant materials;

- F. Permit coordinated administrative record development and civil discovery, as allowed by the Federal Rules, the Local Civil Rules, and any scheduling order entered by the Court;

- G. Consider my separately filed motion for appointment of pro bono counsel through the Court's Civil Pro Bono Panel;

- H. Permit sealed filings or protected submissions where necessary to preserve the integrity of ongoing proceedings and sensitive administrative records;

- I. Preserve the status quo pending lawful administrative review and restoration-related proceedings;

- **J. Grant such other and further equitable relief as the Court deems just and proper.**

**SECTION V — CERTIFICATION AND CLOSING**

- 28 -

COMPLAINT FOR DECLARATORY AND EQUITABLE RELIEF

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint is not being presented for an improper purpose, is supported by existing law or a nonfrivolous argument, and that the factual contentions have evidentiary support or are likely to have support after reasonable investigation or discovery. I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Respectfully submitted,

DECLARATION UNDER PENALTY OF PERJURY I declare under penalty of perjury under the laws of the United States of America, pursuant to 28 U.S.C. § 1746, that the foregoing statements concerning the delivery and service of this document are true, correct, and complete.

_____    _____30 June 26_____

**MARVIN HULLON ELLZEY III**
*Plaintiff, Pro Se*                    *DATE:*

**DEFENDANT SERVICE OF PROCESS AND TRACKING LIST**

**DEFENDANT NO. 1**

Secretary of War

**Mailing Address:**
Office of the Secretary of War / Defense
1000 Defense Pentagon
Washington, DC 20301-1000

**Tracking Number:** ___873799379107_____

COMPLAINT FOR DECLARATORY AND EQUITABLE RELIEF

**DEFENDANT NO. 2**

- Name & Title: THE ACTING SECRETARY OF THE NAVY, in his official capacity, or his successor in office.

- **Mailing Address:**

Office of the Secretary of the Navy

1000 Navy Pentagon

Washington, DC 20350-1000

**Tracking Number:** 873799401775 _____

**DEFENDANT NO. 3**

- Name & Title: REAR ADMIRAL KEVIN M. KENNEDY, in his official capacity as Commander, Navy Personnel Command, or his successor in office.

- **Mailing Address:**

Commander, Navy Personnel Command (NPC)

5720 Integrity Drive

Millington, TN 38055-0000

- **Tracking Number:** 873799438614 _____

**DEFENDANT NO. 4**

- Name & Title: JONATHAN WITTER, in his official capacity as Director, Defense Finance and Accounting Service, or his successor in office.

- **Mailing Address:**

DFAS Headquarters

8899 East 56th Street

Indianapolis, IN 46249-0001

- **Tracking Number:** 873799474862 _____

- 30 -

COMPLAINT FOR DECLARATORY AND EQUITABLE RELIEF

**DEFENDANT NO. 5**

- Name & Title: PHILLIP J. RIZZO, in his official capacity as Chief Executive Officer of the Liberty Military Housing Employee Stock Ownership Trust.

- **Mailing Address:**

Liberty Military Housing Corporate Headquarters

7777 Center Ave, Suite 150

Huntington Beach, CA 92647

**Tracking Number:** 873799511698 _____

- 31 -

COMPLAINT FOR DECLARATORY AND EQUITABLE RELIEF